IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT MYERS DIVISION

CASE NO:

LUANN TURCO and JOHN TURCO,

    Plaintiffs

v.

IRONSHORE INSURANCE COMPANY, a corporation,

    Defendant,
_____/

## COMPLAINT & DEMAND FOR JURY

Plaintiffs, Luann and John Turco (collectively, the "Owner", "Owners", or "Plaintiffs"), by and through undersigned counsel, Neuman Law, PA, hereby sues Defendant, Ironshore Insurance Company, a corporation ("Ironshore", "Insurance Company" or "Defendant"), and in support thereof alleges:

## PARTIES JURISDICTION AND VENUE

1. This is an action for declaratory judgment pursuant to 28. U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure, and for damages that exceed $75,000.00, exclusive of costs, interest and attorneys' fees.

2. The Owners are individuals over the age of eighteen (18) that currently reside in Collier County, Florida.

3. Upon information and belief, Ironshore is a corporation which maintains its principal place of business in the State of New York. Ironshore is an insurance company which collects premiums in exchange for its agreement to provide coverage for property damages to its applicable insured.

4. Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. §1332, because the Owners and Ironshore are all citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5. Venue is proper in the Southern District of Florida, Fort Myers Division, because events alleged herein arose in the Southern District of Florida.

6. All conditions precedent to bringing the instant action have been performed, excused or waived.

7. The Owner retained the law firm of Neuman Law, PA to prosecute this action and is obligated to pay its attorneys' fees. The Owner is entitled to recover its attorney's fees and costs from the Defendant in this action pursuant to the subject Policy and applicable Florida law (including but not necessarily limited to Florida Statute 627.428) and, as such, the Owner seeks the recovery of its attorney's fees and costs from the Defendant.

**GENERAL ALLEGATIONS**

8. On or about September 30, 2016, the Owners entered into an agreement (the "Agreement"), purportedly with Quail West Holdings, LLC (the "Developer"), to purchase the Residence located at 4193 Cortland Way, Naples, Florida 34119 (the "Residence"). A true and

correct copy of the Agreement is attached hereto as **Exhibit "A"**. The Plaintiffs moved into the home on or about May 23, 2017.[1]

9. Upon information and belief Stock Construction, LLC was responsible for the construction of the residence.

10. Ironshore issued Policy Number ORD00400700 (the "Policy"), covering damage to the Residence. A copy of the Policy is attached hereto as **Exhibit "B"**.

11. The Developer failed to timely and properly comply with its obligations under the Agreement, and Stock Construction negligently performed its work at the Residence, by delivering an uninhabitable dwelling with a significant amount of defects and building code violations, including, but not limited to the following (the "defective work and building code violations"):

(a) Dangerous levels of carbon monoxide and other gases,

(b) Mold located throughout the interior and exterior of the Residence,

(c) Improperly installed heating, ventilation, and air-conditioning (HVAC) system,

(d) Condensation dripping from the tray ceiling in the living room,

(e) Discoloration and yellowing throughout the Residence,

(f) Lack of proper ventilation,

(g) Improper and inadequate insulation in the attic,

(h) Excessive moisture,

---

[1] Although the Agreement was apparently entered into between the Owner and Developer, a separate entity named Stock Development, LLC appears as the "Seller" in various areas of the Agreement, such as in an Options Change Order and in an addendum to the Agreement.

(i) Cabinetry, doors, floors and window sills are warping due to inappropriately and dangerously high moisture levels in the home;

(j) Insulation is brown in color and likely toxic, and has impacted all of the drywall in the house,

(k) The improper use of oriented strand board (OSB) board has negatively impacted the structural integrity of the roof, the roof tiles are now visibly wavy and appear to be sinking,

(l) Certain furniture sold by Defendants to the Owners has a toxic finish on it and future shipments of said furniture have been disallowed by United States Customs,

(m) The roof was improperly designed and constructed and is leaking.

(n) Improper and inadequate design of the mechanical system of the Residence,

(o) Improper and Inadequate pouring of the Residence's concrete slab, which is missing a vapor barrier in certain areas of the Residence,

(p) Improper and inadequate waterproofing of the Residence's slab,

(q) Improper and inadequate installation of the Residence's windows,

(r) Improper and inadequate installation of drywall in various areas throughout the residence,

(s) Improper and inadequate installation of certain pool components at the Residence,

(t) Improper and inadequate pour of the pool slab,

(u) Improper installation of piping connections in the Residence, and

(v) Improper and inadequate installation of pavers throughout the residence,

12. Attached collectively hereto as **Exhibit "C"** are true and correct copies of the following inspection reports, which detail the construction and design defects referenced herein: (1) Mold Assessment Inspection Report, (2) Certified Radon Report, (3) Collier County Permits,

(4) Home Inspection Report, (5) CoolZone Report, (6) Cronin Engineering Report, (7) Certificate of Mold Analysis, and (8) Advanced Building Forensic Report.  These reports identify and provide more information regarding the defective work and building code violations.  As a result of the defective work/design and building code violations, the Owners have suffered consequential and resulting property damages such as damage to building components including drywall, hard wood floors, mill work, fixtures, wall coverings, finishes and furniture, as well as out of pocket expenses such as those associated with alternative living conditions, relocation fees and diminution in the value of the Residence.  The Owners have also incurred significant legal and consulting expenses researching and investigating the causes of the aforementioned resulting property and other consequential damages.  The aforementioned damages are covered under the subject Policy and, as such, Ironshore is responsible for same.

13.     The Owners previously made a claim to Ironshore, and Ironshore acknowledged responsibility and paid a small portion of the damages suffered by the Owner, for which Ironshore was responsible pursuant to the subject Policy.  However, and without any additional explanation or justification, Ironshore failed to reimburse the Owners any further damages suffered and for which Ironshore is responsible.  The Owners continue to suffer damages covered under the subject Policy and Ironshore has failed and refused, and continues to fail and refuse, to reimburse same.

14.     As such, Ironshore has failed to fulfill its obligations to the Owners under the terms of the subject Policy, and remains in material breach of same.

## COUNT I
## ACTION FOR DECLARATORY RELIEF

15.     The Owners re-alleges and reaffirms the allegations contained in the above paragraphs 1 through 14, as if fully set forth herein.

16. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure

17. A present controversy exists between the parties requiring an immediate and definitive adjudication and determination of the legal rights between the parties with respect to the subject Policy.

18. As a result of the Ironshore's failure to reimburse the Owner for any and all resulting property and other damage set forth herein, the Owner has suffered and continues to suffer consequential and resulting property damages such as damage to building components including drywall, hard wood floors, mill work, fixtures, wall coverings, finishes and furniture, as well as out of pocket expenses such as those associated with alternative living conditions, relocation fees and diminution in the value of the Residence.  The Owners have also incurred significant legal and consulting expenses researching and investigating the causes of the aforementioned resulting property and other consequential damages.  The aforementioned damages are covered under the subject Policy and, as such, Ironshore is responsible for same.

19. The Owner has the right to seek judicial construction of the subject Policy, as well as a determination that Ironshore is obligated to reimburse the Owner for all the damages incurred by the Owner for which the subject Policy applies.

20. As a result of Ironshore's failure to sufficiently discharge their coverage obligations to the Owner, the Owner continues to incur costs, including but not limited to, attorneys' fees and other consultants' fees, for which it seeks to recover.

WHEREFORE, Plaintiff, the Owner requests the Court to enter declaratory judgment against Ironshore, construing the subject Policy and determining that Ironshore owes the Owner

all resulting property and other damage to which the subject Policy applies, declaring the Owner's rights under the subject Policy, awarding the Owner its attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

### COUNT II
### BREACH OF CONTRACT

21. The Owner re-alleges and reaffirms the allegations contained in the above paragraphs 1 through 14, as if fully set forth herein.

22. Under the terms of the subject Policy, the Ironshore was required to compensate the Owner for the resulting property damage incurred as a result of defective and deficient design/construction of the Residence, including but not limited to damage to building components including drywall, hard wood floors, mill work, fixtures, wall coverings, finishes and furniture, as well as out of pocket expenses such as those associated with alternative living conditions, relocation fees and diminution in the value of the Residence. The Owners have also incurred significant legal and consulting expenses researching and investigating the causes of the aforementioned resulting property and other consequential damages. The aforementioned damages are covered under the subject Policy and, as such, Ironshore is responsible for same.

23. Despite demand, Ironshore has failed to compensate the Owner for all of its damages resulting from the defective and deficient condition of the Residence. This is a breach of the Ironshore's duties under the subject Policy.

24. As a result of Ironshore's material breach of the subject Policy, the Owner has suffered and continues to suffer damages in excess of $75,000.00. Ironshore is obligated to reimburse the Owner for all expenses incurred and damages suffered as a result of their refusal to reimburse the Owner and material breaches of the terms of the subject Policy.

WHEREFORE, Plaintiff, the Owner, demands judgment for damages against Defendant, Ironshore, for all damages, interest, costs, and attorneys' fees, and for such other further relief as this Court deems just and proper.

### Demand for Attorneys' Fees

Plaintiff, the Owner, has been required to retain the law firm of Neuman Law, PA to represent it in this action, and is obligated to pay a reasonable fee for these services. The Owner is entitled to an award of attorneys' fees pursuant to the terms of the subject Policy, §627.428, Fla. Stat. (2016) and other relevant Florida law.

### Demand for Jury Trial

A Jury Trial is hereby demanded in the instant action.

**DATED** on this 20th day of August, 2018.

Respectfully submitted,

**NEUMAN LAW, P.A.**
Attorneys for Plaintiff
14 Southeast 4th Street, Suite 36
Boca Raton, Florida  33432
Tel.:  (561) 571-4500
Fax:  (561) 409-2341

By://s *Eric J. Neuman*
Eric J. Neuman, Esq.
Florida Bar No. 0028186
eneuman@neumanlawfla.com