UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LUANN TURCO and JOHN A. TURCO,

    Plaintiffs,

v.                                          Case No:   2:18-cv-634-FtM-99MRM

IRONSHORE INSURANCE COMPANY,

    Defendant.
_____/

**ORDER**

Defendant Ironshore Insurance Company filed a Motion for Protective Order and Objection to Production from Non-Party on February 4, 2019. (Doc. 40). Plaintiffs Luann Turco and John Turco filed a response in opposition on February 11, 2019. (Doc. 42). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the requested relief.

**I.**    **Background**

According to Defendant, "[t]his case arises from Plaintiffs' first[-]party insurance claim against [Defendant] for a loss, or losses, allegedly sustained at property located at 4193 Cortland Way, Naples, Florida 34119 (the 'Property') due to construction defects." (Doc. 40 at 1). Plaintiffs assert two claims in the Complaint: Declaratory Judgment (Count I); and Breach of Contract (Count II). (*Id.*; *see also* Doc. 1). The Complaint in this action does not include allegation(s) or cause(s) of action related to the handling of subrogation claims. (Doc. 40 at 2; *see also* Doc. 1).

Further, Defendant states that it paid over $300,000 to Plaintiffs for damages to the dwelling, contents, and additional living expenses before this action was commenced. (Doc. 40 at 2). Additionally, Defendant advises that Plaintiffs filed a state-court lawsuit against the

construction contractors that built the allegedly defective dwelling: Quail West Holdings LLC; Stock Development Construction LLC; and Stock Construction LLC (collectively, the "Contractors"). (*Id.*). Attorney Richard Maleski of the law firm Cozen O'Connor, P.C. is the subrogation counsel for Defendant in the state-court litigation, which remains pending. (*Id.*).[1]

The motion *sub judice* was precipitated by Plaintiffs' counsel's issuance in this litigation of a "Notice of Taking Videotape Deposition"[2] and "Notice of Production from Non-Party" with corresponding subpoenas seeking: (1) deposition testimony and production of documents from Mr. Maleski; and (2) the production of documents from the records custodian of Cozen O'Connor, P.C. (*Id.*; *see also* Docs. 40-1, 40-2, and 40-3). The notice, re-notice, and corresponding subpoenas relating to the videotape deposition of and document production from Mr. Maleski would have required the deposition and document production to occur on February 22, 2019 at 10:00 a.m. (Docs. 40-1, 40-3, and 40-4).[3] The notice and subpoena seeking documents from Cozen O'Connor, P.C. would have required compliance no later than 10:00 a.m. the day before the deposition was scheduled to occur. (Doc. 40-2).

---

[1] In their response, Plaintiffs mention in a footnote that they have initiated a separate state-court action against the Contractors and undisclosed others, whom the Plaintiffs label collectively as the "Tortfeasors." (Doc. 42 at 1 and n.1).

[2] The initial "Notice of Taking Videotape Deposition" appears to have been served on or about January 24, 2019, (Doc. 40-3), and a "Re-Notice of Taking Videotape Deposition – Change in Time Only" appears to have been served on January 25, 2019, (Doc. 40-1).

[3] The Court *sua sponte* cancelled the deposition pending resolution of the motion *sub judice*. (*See* Doc. 43).

## II.     Arguments

### A.     Defendant's Motion

Defendant moves this Court for a protective order pursuant to Fed. R. Civ. P. 26(c)(1)[4] that would preclude Mr. Maleski and Cozen O'Connor, P.C. from complying with the challenged subpoenas. (Doc. 40 at 1). According to Defendant, these subpoenas seek "information regarding [Defendant's] handling of [Defendant's] subrogation claim against [the Contractors] relating to one of the claims submitted by Plaintiffs." (Doc. 40 at 2). Defendants argue that "[t]he actions of [Defendant's] subrogation counsel are completely irrelevant to the issues of the scope of damages at Plaintiffs' property due to construction defect and whether the policy provides coverage for Plaintiffs' claims for damages at Plaintiffs' property due to construction defect." (*Id.* at 3). Defendants contend that the type of action brought by the insureds – *i.e.*, the Plaintiffs here – is what determines the relevance of such requests. (*Id.* (citing *Nationwide Ins. Co. of Fla. v. Demmo*, 57 So. 3d 982, 984 (Fla. 2d Dist. Ct. App. 2011))). Defendants further contend that because "Plaintiffs' complaint does not allege a bad faith claim (nor could it at this stage), and simply alleges breach of contract, claims[-]handling discovery is irrelevant when the underlying coverage dispute has not yet been decided." (*Id.* (citing *Homeowners Choice Prop. & Cas. Ins. v. Avila*, 248 So. 3d 180, 184 (Fla. 3d Dist. Ct. App. 2018))).

Defendants take the position that "[t]he sole issues in this case are whether the terms, conditions, and exclusions of the policy afford coverage for Plaintiffs' claim and[,] if so, the amount of such damages." (Doc. 40 at 3). They also argue that "[t]he way in which Richard

---

[4] Defendant's motion also cites to Fed. R. Civ. P. 29(c)(1) as providing grounds for relief. (*See* Doc. 40 at 2). This appears to be a typographical error because no such sub-paragraph of Rule 29 exists. *See* Fed. R. Civ. P. 29. The Court construes Defendant's motion to be brought pursuant to Fed. R. Civ. P. 26(c)(1) as stated in the first sentence of the motion. (*See* Doc. 40 at 1).

Maleski or Cozen O'Connor handled [Defendant's] subrogation claim against the [C]ontractors is not discoverable in Plaintiffs' first[-]party claim against [Defendant] for breach of contract as such information is not likely to lead to the discovery of relevant admissible evidence." (*Id.* at 3-4).[5]  Additionally, Defendant asserts that "through these requests for information on the actions of [Defendant's] subrogation counsel for settlement of a subrogation claim, Plaintiffs are inevitably seeking attorney-client privileged communications and work product despite the manner in which they are couched." (*Id.* at 4 (citation omitted)).

### B. Plaintiffs' Response

In response, Plaintiffs state that they "have come to learn that [Defendant], by and through its prior counsel, Richard Maleski of the law firm Cozen O'Connor, settled with the [Contractors] and obtained payment and a release from the [Contractors] for the same damages sought by [Plaintiffs] from [Defendant] in this matter." (Doc. 42 at 1-2). With regard to the challenged subpoenas, Plaintiffs explain that they "seek to take the deposition of Mr. Maleski as well as review various categories of *non-privileged* documents in the possession of Mr. Maleski as Mr. Maleski had direct and apparently sustained contact with the [Contractors] regarding the claims asserted in this matter." (*Id.* at 2 (emphasis added)). Plaintiffs also pointedly explain that they "are not looking for information protected by either the work product doctrine or Attorney-

---

[5] The Court pauses here to point out that Defendant's invocation of and express reliance on the phrase "likely to lead to the discovery of relevant admissible evidence" is cringeworthy. Rule 26(b)(1) was amended effective December 1, 2015 to delete the former provision for discovery of relevant but inadmissible information (*i.e.*, the phrase "reasonably calculated to lead to the discovery of admissible evidence") because "[t]he phrase has been used by some, incorrectly, to define the scope of discovery." Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment.  This amendment to Rule 26 has been in effect *more than three years*. Yet, this Court has observed time and time again that lawyers continue to cling to the "reasonably calculated" phrase that the rule drafters affirmatively jettisoned from Rule 26 in 2015. The Court admonishes all counsel in this case to read the current version of Rule 26, and to purge the former language of the Rule from their minds and from their recycled legal briefing.

Client Privilege, which should be clear from the subject requests, but has been made clear in subsequent communications between the parties' counsel." (*Id.*). Plaintiffs argue that "[i]t is axiomatic that [Defendant's] communication with the [Contractors] regarding the claims asserted by [Plaintiffs] and the damages they sustained, surrounding the ultimate settlement or otherwise, are reasonably calculated to lead to the discovery of admissible evidence in this matter." (*Id.*).[6]

As to the relevance of the discovery sought, Plaintiffs state that "[b]eyond the obvious fact that [Defendant's] communication with any third parties (let alone the [Contractors]) is relevant, [Defendant] has specifically put the underlying construction defect litigation at issue within the instant action." (*Id.* at 3-4). Plaintiffs point out that Defendant's "Affirmative Defense Seven calls for a set-off for any monetary funds that the [Plaintiffs] obtain in the underlying construction defect litigation." (*Id.* at 4). They maintain that communications Mr. Maleski had with the Contractors are directly relevant to Defendant's set-off defense. (*Id.*). Plaintiffs also state that Mr. Maleski has information relating to them (as the insureds under the policy at issue), Defendant (as the insurer of the policy at issue), and the Contractors (who allegedly caused the damage for which coverage is sought under the policy at issue). (*Id.*). According to Plaintiffs, "[t]he policy, [Defendant's] failure to pay under the same, and the conduct of the [Contractors] constitutes the crux of this case." (*Id.*).

Furthermore, Plaintiffs contend that the information they now seek through the deposition of Mr. Maleski and his law firm's records custodian was previously requested directly from the Defendant in a Rule 34 Request for Production of Documents. (*Id.* at 4-5; *see also* Doc. 42-2). Plaintiffs state that Defendant did not object to these prior discovery requests, but agreed to

---

[6] If it were possible to insert an audible sigh here, the Undersigned would. The admonition contained in footnote 5 *supra* applies with equal force to Plaintiffs' invocation of and reliance on the former language of Rule 26.

produce the documents. (*Id.*).[7] In light of this, Plaintiffs take the position that Defendant "cannot now argue that these communications[] are now irrelevant to the claims and defenses presented" and that Defendant has waived its objections by failing to assert them in response to the earlier document requests (Doc. 42 at 5).

On the issue of privilege and work product, Plaintiffs are adamant that (1) they have specifically carved out from their demands under the subpoenas any documents that are protected under the attorney-client privilege and (2) they are not seeking the disclosure or production of privileged material. (*Id.* at 5). Somewhat incongruously, however, Plaintiffs criticize Defendant for not having produced a privilege log and for allegedly failing to "identify any factors [that] would place communications within the realm of attorney-client privilege." (*Id.*).[8] Nevertheless, Plaintiffs expressly deny that they are seeking privileged documents or the Defendant's claims file. (*Id.*). Instead, they clarify that they "are attempting to secure the deposition testimony of Richard Maleski and certain documentation in his possession as it concerns the construction deficiencies, resulting damage, [Defendant's] failure to pay based upon the same, and [the Contractors'] purchase of [Defendant's] subrogation rights." (*Id.*).

Lastly, Plaintiffs assert that Defendant's arguments are "moot" because Plaintiffs fully intend to amend their Complaint to add a claim for or allegations of bad faith against Defendant

---

[7] In support of this representation, Plaintiffs submit a copy of their First Request for Production dated November 28, 2018. (*See* Doc. 42-2). Oddly, Plaintiffs failed to also submit a copy of the Defendant's written response for the Court's consideration. (*See id.*). In a footnote, Plaintiffs state that they have filed Defendant's responses (*see* Doc. 42 at 5 n.5), but they did not in fact do so. (*See* Doc. 42-2). On the face of the record, therefore, the Court has only Plaintiffs' counsel's unverified representations concerning Defendant's response and non-objection to the document requests.

[8] Plaintiffs' insistence that they are not seeking privileged documents or information is facially incongruous with their express or implied suggestions of waiver, as well as their criticism that Defendant has failed to adequately support the application of the attorney-client privilege.

for "its conduct, including its communication and ultimately resolve claims with the [Contractors] adverse to [Plaintiffs'] interest and over [Plaintiffs'] express written objection." (*Id.* at 6).  Plaintiffs intend to amend their Complaint in this action to add the bad-faith claim or allegations after they have complied with certain conditions precedent to doing so.  (*Id.* and n.6).

### III.  Analysis

Pursuant to Fed. R. Civ. P. 26(c)(1), any "party or any person from whom discovery is sought may move for a protective order," and the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order."  *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005) (citing *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).  The decision to enter a protective order is within the Court's discretion and does not depend on a legal privilege. *Id.* at 429 (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985)).

Moreover, Fed. R. Civ. P. 26(b)(1) governs the scope of discovery in civil litigation.  The Rule states that generally:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  The scope of permissible, relevant discovery is determined by the parties' claims and defenses.  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37

(11th Cir. 1997). "Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *Gonzalez v. ETourandTravel, Inc.*, No. 6:13-cv-827-Orl-36TBS, 2014 WL 1250034, at *2 (M.D. Fla. Mar. 26, 2014) (citing *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013)).

In addition to relevance, discovery must be proportional "to the needs of the case." Fed. R. Civ. P. 26(b)(1). In making this determination, the Court is guided by the non-exclusive list of factors set forth in Rule 26(b)(1). The proportionality analysis begins with a review of the actual claims and defenses in the case, "and a consideration of how and to what degree the requested discovery bears on those claims and defenses." *Koster v. Landmark Am. Ins. Co.*, No. 5:14-CV-689-OC-37PRL, 2016 WL 3014605, at *2 (M.D. Fla. May 20, 2016).

The two primary sticking points in the instant discovery dispute concerning the necessity of a protective order are privilege[9] and relevance. The Court addresses each point in turn.

Regarding privilege, Plaintiffs have made two material concessions that weigh heavily in this Court's determination as to whether good cause exists to grant the requested protective order. First, Plaintiffs unequivocally state that the subpoenas do not seek privileged documents or information. (Doc. 42 at 5).[10] Second, they also unequivocally state that they do not seek to obtain the Defendant's claims file. (*Id.*). In light of these unequivocal concessions, it is clear

---

[9] Because the parties did not delineate clearly between the attorney-client privilege and the work-product protection in their arguments, the Court's references herein to "privilege" are intended to encompass both the attorney-client privilege and the work-product protection.

[10] The Court construes Plaintiffs' concessions to extend to documents and information that are subject to the attorney-client privilege, the work-product protection, or any other privilege cognizable under relevant law. Moreover, to the extent Plaintiffs have expressly or impliedly argued waiver of any applicable privilege or protection against disclosure, the Court finds that Plaintiffs have failed to adequately support their waiver arguments factually or legally. Thus, the Court cannot reach a finding of waiver on the existing record.

that Plaintiffs do not seek – and, thus, Defendant need to identify, log, or produce – any documents or information that Defendant maintains are subject to the attorney-client privilege, the work-product protection, or any other privilege cognizable under the relevant law (including the claims file) because those documents are categorically *not responsive* to the subpoenas at issue based either on the plain wording of the subpoenas or on Plaintiffs' unequivocal concessions in responding to the motion *sub judice*. Accordingly, the Court construes the subpoenas to command the production only of non-privileged, non-work-product documents in the recipients' possession, custody, or control. The Court also construes the subpoenas to exclude documents that are part of Defendant's claims file relating to the property at issue.

As it relates to the deposition testimony of Mr. Maleski, Defendant's counsel in the subrogation action, the Court declines to address Defendant's privilege objections before Plaintiffs have actually sought any privileged information during the deposition. The Court is not certain at this point that Plaintiffs' questions of Mr. Maleski at the deposition will actually seek any privileged information given Plaintiffs' clear concessions in response to the motion *sub judice*. As a result, the Court finds it more appropriate for Plaintiffs to proceed with the deposition and allow Defendant's counsel to object to any specific questions seeking privileged or work-product information after the questions are asked of the witness on the record. Plaintiffs may then file an appropriate motion to compel any deposition testimony that they believe was wrongly withheld on privilege or work-product grounds.

With regard to relevance, the Court finds that Requests No. 1-7 attached to the subpoena to Cozen O'Connor, P.C.'s records custodian, (*see* Doc. 40-2 at ECF pages 7-8), and Requests No. 1-7 attached to the deposition subpoena to Mr. Maleski, (*see* Doc. 40-4 at ECF pages 4-5), are relevant to the claims and defenses asserted in this litigation because they relate, *inter alia*, to

the property at issue, the insurer's communications with the Contractors concerning Plaintiffs and the property, Plaintiffs' objections to Defendant's release of the Contractors in the subrogation action, and Defendant's relationship to an individual (*i.e.*, Erol Kantor) and entity (*i.e.*, Raphael & Associates) that appear to have signed the release on Defendant's behalf in connection with the subrogation action despite having no obvious connection to Defendant. Responsive, non-privileged documents are likely to contain relevant evidence concerning, *inter alia*: (1) the alleged damages to the subject property; (2) valuation of those damages; (3) coverage under and terms of the subject insurance policy; (4) Defendant's representations to the Contractors concerning its obligations and/or payments to Plaintiffs under the subject insurance policy; (5) Defendant's defense premised upon its prior payments to Plaintiffs (as alleged in Defendant's Sixth Affirmative Defense (Doc. 36 at 8)); and (6) Defendant's set-off defense (as alleged in Defendant's Seventh Affirmative Defense (*id.*)).

However, the Court also finds that Requests No. 6-7 attached to the subpoena to Cozen O'Connor, P.C.'s records custodian, (*see* Doc. 40-2 at ECF pages 7-8), and Requests No. 6-7 attached to the deposition subpoena to Mr. Maleski, (*see* Doc. 40-4 at ECF page 5), are facially overbroad, potentially burdensome, and not proportional to the needs of this litigation insofar as they command the production of "[a]ll documentation" relating to the subject matters specified in the requests. Instead, the Court will limit these requests to "documents sufficient to identify" the subject matters specified in the requests. In other words, the Court will not require the subpoena recipients to produce *all* documentation responsive to these requests. The Court will only require the recipients to produce documents sufficient to explain to Plaintiffs what the relationships are between Defendant and the referenced entity and individual.

Lastly, the Court rejects Plaintiffs' argument that because they intend to add a bad-faith claim or allegations of bad faith to this case in the future, the Court should find that Defendant's arguments as to relevance are somehow "moot." (*See* Doc. 42 at 6). Relevance is determined on the basis of the existing claims and defenses in the litigation, not on unasserted claims and defenses. *See* Fed. R. Civ. P. 26(b)(1). In that light, Defendant's relevance arguments in connection with the current discovery dispute are not "moot," as Plaintiffs suggest. Instead, Plaintiffs' arguments relating to a future bad-faith claim or allegations of bad faith are entirely premature. If Plaintiffs are successful in adding a bad-faith claim or allegations of bad faith to this litigation, then the scope of relevant discovery may change. For now, however, the scope of permissible discovery in this case is informed by and limited to the claims Plaintiffs have actually asserted and the Defendant's asserted defenses thereto.

### IV. Conclusion

For the foregoing reasons, the Court **ORDERS** that Defendant's Motion for Protective Order and Objection to Production from Non-Party (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion is granted insofar as Defendant seeks protection against the subpoenas at issue relating to privileged documents and/or Defendant's claims file.

2. The motion is granted insofar as the Court limits Requests No. 6-7 attached to the subpoena to Cozen O'Connor, P.C.'s records custodian, (*see* Doc. 40-2 at ECF pages 7-8), and Requests No. 6-7 attached to the deposition subpoena to Mr. Maleski, (*see* Doc. 40-4 at ECF page 5) as set forth *supra*.

3. The motion is denied without prejudice in all other respects.

    4.      Plaintiffs shall proceed to serve amended subpoenas consistent with this Order **no later than March 8, 2019**.

    **DONE AND ORDERED** in Fort Myers, Florida on March 4, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties